Good morning, Your Honors. I'm Orly Taitz, and I'm representing Defender Freedoms Foundation. Your Honors, I'd like to use a total of 10 minutes of appellants, 15 minutes, and reserve 4 minutes for rebuttal. You're married, the two of you? Is this your husband? No. No. No. Well, what's confusing is usually two people don't stand up there, but I understand what you're saying is... If he isn't, we do weddings, too. If he isn't, we do weddings, too. I don't think my wife would... No charge. Well, but you're trying to tell us how you want to divide your time. Yes. But, okay, so you have 15 minutes total for both of you. You have 15 minutes for both of you. So if you're saying you want to use 10, but you want to save 4 for rebuttal, that only leaves her 1. I'd like to use 6 and reserve 4 for rebuttal. Okay. Okay. I'm going to use about 5 minutes, and then Mr. Marcus is going to present his case, and we'll just leave 5 minutes. He gets the rebuttal. You already used almost 3 minutes. We'll start over. We'll put you back to square one. Okay, thank you. There. Get on your mark, go. We've submitted several examples of plaintiffs alleging in their amended complaint that Ms. Tates has engaged in protected activities... You need to sit down until it's your turn. ...under each of the four categories in California's anti-slap statute. Plaintiffs argue that even if Ms. Tates engaged in protected activity, that their claims don't arise from her free speech or petitioning activity. But to the contrary, it's clear that for each instance in which plaintiffs allege that Ms. Tates engaged in free speech or petitioning activity, there is a corresponding claim in the amended complaint based on that alleged activity. One example, there's a lengthy excerpt in the amended complaint where Ms. Tates had given an interview on the Andrea Shea King talk radio show where plaintiffs contend that Ms. Tates defamed them, that Ms. Tates was informing the birther movement community and its thousands of followers. Can I cut to the chase with you a little bit since we don't have a lot of time of what some of my... Now, you allege that the plaintiffs waived their choice of law argument. Is that correct? Is this having to do with the issue of whether Pennsylvania law was? Right. Yes. That issue is fairly straightforward to resolve and it's resolved by looking at Judge Rubreno's order regarding transfer and determining what was the case... Are you alleging she waived it? That the plaintiffs waived it? Are you alleging waiver? We assert that California is substantive law controls and that they waived the issue because among other reasons... So the answer would be yes? Yes. Okay. Now, all right, there's like 20 claims here, right? There are 10 claims against Ms. Tates. All right. Well, there's... Okay. Let's say if we were to find that some conduct is protected but some is not, have the defendants met their burden under the first prong of the anti-SLAPP analysis? Yes. We've cited cases that say that a defendant moving under the anti-SLAPP statute does not have to show that each alleged act comes within the one or more of the four categories of protected activity. Well, but look at... But like, okay, the defendants published private information about the plaintiffs. Why is that conduct protected under the anti-SLAPP statute, particularly given that the private information was not necessary to warn the public about the plaintiff's professional services or the alleged fraud? Because it was given in the context of Ms. Tates informing the birther movement community of the usurpation of her website that... That doesn't do anything about the plaintiff's professional service or the alleged fraud. That's just saying, hey, this is where she lives and go with, you know, it's... How is that... How does that go to your core, you know, what you're saying it was necessary to inform the public about the professional service and the alleged fraud? Well, as to Ms. Liberi, there was a controversy before the case was filed as to her real identity where she contended that she was not the Lisa Liberi in question, that she was a different Lisa Liberi. So, in part, what Ms. Tates was doing was attempting to clear the record as to whether this particular Lisa Liberi was the Lisa Liberi who was a convicted felon. And this was done, again, in the greater context of informing the birther community that Mr. Berg, a prominent figure in that movement, was using a convicted felon in his law practice. In the supplemental excerpts, there's a reference to the Berg versus Obama case. In that case, Mr. Berg was using... He was claiming that he had affidavits from Africa showing that President Obama was born in Kenya. Ms. Tates was informing the birther community that those affidavits should be looked at with skepticism because of the use of a convicted felon by Mr. Berg. And so that is the context of one incident that is protected activity under the anti-slap statute. And if I could go back for a moment to... You only have 18 seconds, and I'm going to leave this to my presiding judge here, but at nine minutes, you're cutting into your colleague's time. I will turn it over to Ms. Tates at this time. Your Honor, I would like to stress just three or four points. State your name. My name is Orly Tates, and I'm the president of Defender Freedom Foundation, and I represent the foundation. So first point, there are two prongs to anti-slap, and I'm going to start with the second one. Did they have a legally sufficient complaint? They never had it and could not have it. They filed it in 2009 under diversity, and there was never any diversity. I urge you, please look at the page 2120 of the supplemental excerpt of record that they themselves, plaintiffs, provided. This is a ruling from the prior judge in Pennsylvania. And he states, in terms of jurisdiction in this case, he is stating, jurisdiction for this action is predicated upon diversity of citizenship 28 U.S.C. 1332. Then he lists the parties, and he lists the plaintiffs, Ostella and Go Excel Global are citizens of New Jersey, and then he lists two defendants, James Sundquist and Salt Rock Publishing, also residents of New Jersey. And the whole point is that Berger allowed this criminal library to draft pleadings for him. She never went to law school. She has no clue what diversity is. She saw that just because few people are from different states, there is diversity, and there was never diversity. And what Mr. Marcus did in his pleadings here to this court, he added, he said, the case is brought under diversity, plus there is a federal question, fair credit reporting. However, they added fair credit reporting two years later with their first amended complaint. Now, anti-SLAPP is very complicated, all right? And so it seems to me that the plaintiffs might, let's say if I were to conclude that they might have established a reasonable probability of success on their defamation, privacy violation, and intentional, but listen to the question, an intentional infliction of emotional distress. Do we still have to determine whether each of the plaintiffs' other causes of action state a legally cognizable claim? Absolutely. Because I don't think that was done. You have to look claim after claim after claim. But before you even look, you don't even need to bother looking at any claims, because there was never diversity, and never federal court had any jurisdiction. As I stated, first complaint in 2009 was filed under diversity. Two plaintiffs, two defendants from the same state of New Jersey, never was any diversity. The fact that Mr. Marcus adds fair credit reporting in the amended complaint two years later does not create diversity. Further, another very important point, and I believe that anti-SLAPP was written, was created for cases like this. I was the president of foundation, and there were important issues of First Amendment right. Well, it wasn't, interestingly, I think what confuses people, it wasn't really created for any type of case. It started out where there were tenants complaining about discrimination, but now a lot of times it's other, and so it can be any number of people alleging First Amendment. It could be a newspaper, it could be an individual, it could be a tenant, it could be big, small people. Absolutely, Your Honor. But what I'm saying, what did I say there, and what was stated by me or by foundation, that the website for the foundation was stolen by the former webmaster, and the website for the foundation was stolen by the former webmaster. That an attorney, Phillip Burke, who was about to be disbarred, colluded with a convicted forger and thief, Lisa Liberi, an unethical former webmaster, where they stole the website and changed the link to PayPal. Okay, but, alright, there might be some core speech, but that doesn't mean you can do anything that you want, either. And I didn't, and I didn't, there is nothing, there isn't a stitch of evidence in this complaint that I have revealed any information that was private, because we have, I don't know if you read everything there, but we have shown, it was already arrested, Judicata, that when Judge Guilford dismissed LexisNexis, they provided Liberi's own declarations in her criminal case, and her two petitions for bankruptcy, where she provided two of her unredacted social security numbers, address, all of her personal information, and she never opposed it. And on that basis, they showed that they dismissed other parties. And what I'm trying to say, that as a president of foundation, the foundation had not only the right, but the duty to advise the donors. People were filing their, they were filing their tax returns. We had to tell them, listen, your donations are not going to foundation. They went to... It's important. So, moreover, we had a duty to advise the donors that a convicted thief, Lisa Liberi, has now access to their credit cards. If this is not something that foundation has a right and a duty to provide, what else? And additionally, the fact that Philip Burke is using a convicted forger as his paralegal. He filed two cases, one against President Bush, saying that he was complicit in 9-11. He filed a case against Barack Obama, saying that he has declarations from Kenya. And he went on radio show with Liberi, saying, this is my able assistant, Lisa, who drafted the complaint against Barack Obama. So it was a reasonable exercise of speech of advising the people. His able assistant, Lisa, is a convicted forger who was convicted just recently of 10 counts of felony forgery and grand theft. So this is an important issue. Just a couple more points. Well, you only have two and a half minutes in, and you're not getting more. Another point that's extremely important. Your Honor, you have to dismiss the complaint on part of Philip Burke and law officers of Philip Burke, because they never even filed an appeal. They never contested this case and, as such, would be deemed to agree to the appeal. Moreover, we showed that law officers of Philip Burke don't exist and never existed. And additionally, in this complaint, we have shown that Go Excel Global doesn't exist from 2012. And in my opinion, this is an egregious fraud and unethical behavior on part of Mr. Marcus to continue maintaining a case from Go Excel Global, a foundation that doesn't exist and didn't exist from 2012. And we have provided, in December of 2013, the record of revocation of the corporate license of Go Excel Global. And maybe you should ask Mr. Marcus, why is he maintaining a legal action on behalf of a corporation that doesn't exist for four years now? Thank you. Good morning, Your Honors. It pleases the Court. My parents' fault for making me so short. I had the same problem. It pleases the Court. I'm Stephen Marcus. I am representing the plaintiffs' appellees, Lisa LaBerry and Lisa Ostella. We do not represent Mr. Burke. I would like to ask a preliminary question. Is there anything in the record indicating you raised choice-of-law issues prior to appeal? And if not, is this issue waivable and did you waive it? Your Honor, I don't know if it was raised orally. I did not find it in the papers on appeal. We did not represent or we would not lead counsel at the time that this motion was argued before. This Court has the discretion to not waive that argument. This is purely an issue of law on the choice of law. And this Court has the discretion to consider on a de novo review, which this is, issues purely of law where there is no prejudice to the opposing party because it is purely an issue of law. Well, there is prejudice in this instance because under, you know, here we have it here. And in California, we have a different view on handling, you know, we apply California law in anti-slap cases in Federal court. And we've got precedent to that fact. Back in Pennsylvania, it's a much narrower, it's, so there is prejudice. So now it's here and it was never raised before and now, you know, you're asking us for the first time then to give you the benefit of Pennsylvania law, right? Well, Your Honor, citing the case of the United States versus Echeverria-Escobar, which is 270 F 3rd 1265, there were four exceptions to the rule of arguments not raised at the District Court being waived. Exception three is issues presented as purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court. And there is no such prejudice here in terms of the failure to raise it at the trial court. It's raised, it's briefed. And second is plain error has occurred and injustice might otherwise result. In this particular case, it was a diversity case filed in Pennsylvania. As a matter of law, Pennsylvania law applies. Did the operative complaint contain any Pennsylvania claims at all? I mean, the initial complaint? Yes. I don't know, Your Honor. I'll be honest with you. I don't know. As I read it, I didn't find any. And then this raises a question whether the panel should bar California and a slight slap as a defense when the operative complaint contains California claims, especially if the complaint no longer contains any Pennsylvania claims at all. Well, it contains common law claims, which obviously are Pennsylvania common law as well as California common law. So they do involve state claims, not necessarily state statutory claims. But it does involve common law claims, defamation, invasion of privacy, and things of that nature. Whether some of the California claims would survive by application of Pennsylvania law and the various choice of law issues that the Pennsylvania courts would apply, I can't answer that at this time. I think that's an issue for the district court. Should this matter on remand be subject to a 12b-5 motion? An anti-slap motion is not the equivalent of a 12b-5 motion. Well, now, okay, if we find that some conduct that is protected, if we find that plaintiff's claims arise from some conduct that is protected, but some not, doesn't the court need to hold that defendants have met their burden under the first prong of the anti-slap and then we have to proceed to analyze claim by claim? No, Your Honor. Again, because this is not the equivalent of a demurra. The fact that some protected activity is incidental or antecedent to unprotected activity does not mean that the whole complaint is subject to the anti-slap motion. For example, filing an abjectly false pleading in a court proceeding is protected activity. Rebroadcasting that activity on radio talk interviews or on a computer blog is not protected activity. The fact that the initial communication, which was then rebroadcast, might have been protected is just incidental. And the primary crux of the claim, which the court must look at, is the unprotected activity of rebroadcasting that. Well, it seems to me that somewhere at its core, you know, publishing, warning the public about plaintiff's professional services and alleged fraud is core First Amendment. No, it isn't, Your Honor. Warning the public with false accusations on someone who is not a public figure. And neither Lisa Liberi nor Lisa Ostella are public figures. They were not known to the public until Ms. Tate decided to make them known to the public. Well, but the corruption and the fraud, that... If it's false accusations, it's libel. It's slander. It's defamation. It's invasion of privacy. And just because you claim that you were advising the public of something doesn't make it protected activity. If that were the case, then any defamation... Well, there's nowhere that... Is she a convicted felon? Has all these fraud... You didn't come back with anything to tell us that it wasn't true. She was convicted of writing false checks. She's not a career criminal. She's not a career felon. She's never been convicted of real estate fraud. She is not a career document forger, as Ms. Tate has accused her of being. And she is a private person. All she was in this case was Mr. Berg's paralegal. So we do think that Pennsylvania law applies. We don't think that the speech itself is protected activity because primarily, certainly, the invasion of privacy, the setting up of false accounts, which is alleged in the complaint and shown, is not protected activity. You know, as I understand the choice of law analysis, if this panel were to conduct a choice of law analysis using Pennsylvania's choice of law rules, the most reasonable outcome, as I see it, would be to find that California law applies. Is that wrong? On substantive issues, on some of the claims, possibly. With respect to the anti-SLAPP provision, no, because Pennsylvania law would consider that a procedural issue and it would apply the Pennsylvania anti-SLAPP statutes. But you couldn't point to that you had any Pennsylvania claims. They had common law claims, which are Pennsylvania claims. Defamation, invasion of privacy, stolen identity, those are common law claims which arise under Pennsylvania common law as well as California common law. And... And given that instance, we believe the Pennsylvania courts, as a state court, would apply the Pennsylvania anti-SLAPP statute, which, even as I believe Ms. Tate has conceded, would not cause the dismissal of this complaint. And even though I do have six minutes left, if your honors have any additional questions, this has been a subject of 250 pages, actually closer to 500 pages of briefing. And probably close to 10,000 pages of record and excerpts. We notice. You're very kind. You said you're very kind. Thank you, Your Honor. So, it's fine. I don't have any other questions. You've got another question? No, I don't. Okay. Your Honor, you stated that I have one and a half minutes. You've got one minute and 14 seconds. Thank you. I see you're keeping time with me, but not... No, but the time clock is right over there. No, no, but not with prior parties. But anyways, Your Honors, first of all, it's outrageous that Mr. Marcus stood here and said this woman was convicted only of false checks. You have in front of you the record that shows that she had indictment on 27 counts. She was convicted of 10 felony counts of grand theft. It was over $400,000 stolen. Forgery of an official government seal. An offer of forged documents. And the issue is danger to the donors of Defender Freedom Foundation that the website was stolen, that all the donations that went through this website were diverted, and that their credit card and checking information is exposed to a woman who is a convicted thief, who was convicted of 10 felony counts of theft and forgery. That's the crux of the case. And this is a protective activity to advise this. Furthermore, they're stating identity theft. They don't even have a cause of action on identity theft. I don't know if Mr. Marcus even read the original complaint or the amended complaint. There is no cause of action for identity theft. Further on, he's stating false information. He did not... All right, your time's up. But you seem to imply that we were only keeping track of time on you, which he did not use five minutes of his time. We allowed you to go over time. So you're not correct. You got every second of your time, and you went into his rebuttal time. No, no, I meant prior cases. I said prior cases. Well, that's up to the court. It's our time when we have questions. Yes, Your Honor. You're absolutely right. I apologize. Do you have any questions for me? No, thank you. Thank you. Very well argued. We're going to take a recess at this time.
judges: Pregerson, D.W. Nelson, Callahan